```
                   United States District Court
                     District of Massachusetts
_____
                              )
JOSEPH S. PROVANZANO,         )
       Plaintiff,             )
                              )
       v.                     )   Civil Action No.
                              )   10-11893-NMG
BRIDGETTE M. PARKER,          )
Individually and doing business )
as PARKER VIEW FARM, PARKER VIEW )
FARM, INC., ROBERT M. TURNER, )
Individually and doing business )
as LM TURNER STABLES and LM   )
TURNER STABLES, INC.,         )
       Defendants.            )
_____)
```

## MEMORANDUM & ORDER

**GORTON, J.**

The plaintiff, Joseph S. Provanzano, brings this action against Bridgette M. Parker, individually and doing business as Parker View Farm, Inc. ("Parker") and Robert M. Turner, individually and doing business as LM Turner Stables, Inc. ("Turner"), for a violation of the Massachusetts Consumer Protection Act, Mass. Gen. Laws ch. 93A, §§ 2 and 9 ("Chapter 93A").

### I.    Factual Background

Provanzano, a Massachusetts resident, is the owner of four horses: Mild Emotion, Sandra's Dream, Joe's Boy and Ms. Martha Anne. In 2006, Mild Emotion suffered an eye injury while she was being boarded and trained at Turner Stables in New Hampshire.

-1-

After the mare was injured, Turner recommended that she be sent to Parker (who owns a horse farm in Kentucky) for surgery and to be boarded in the event that she needed additional surgery. Provanzano claims (and the defendants deny) that Turner then introduced him to Parker at a horse show in Massachusetts. Provanzano subsequently agreed to board Mild Emotion at Parker's facility in Kentucky for $350 per month.  Beyond that, the parties dispute the facts.

Provanzano claims that, at the time, he was not aware that 1) Parker's primary business was breeding horses, 2) Turner was her agent for selling those horses or 3) the two regularly transacted business together.  Provanzano alleges that Turner arranged for Mild Emotion's transfer to Kentucky and assured Provanzano that all of the tack that he had purchased for Mild Emotion would be transferred with her.  Instead, Turner neglected to return to plaintiff or deliver to Parker over $8,000 worth of tack.  Parker charged Provanzano $6,000 more than agreed upon in boarding fees and over $100,000 in additional expenses that were not part of the original agreement.

The complaint goes on to assert that, during Mild Emotion's recuperation, Turner suggested that Provanzano breed her to defer some of the costs.  In a letter to Parker and Turner, dated March 6, 2007, Provanzano told the defendants that they did not have permission to breed Mild Emotion but despite those instructions,

the defendants bred Mild Emotion in or about April, 2007. Upon receiving a second invoice, Provanzano learned that Mild Emotion had birthed a foal, Sandra's Dream. Provanzano paid the outstanding invoices only after Parker threatened to sell Mild Emotion if he did not.

Despite the fact that, a short time later, Provanzano denied permission (for a second time) for the defendants to breed Mild Emotion, they bred her again and Joe's Boy was the result. At that point, Provanzano was billed (and paid) $360 per month per horse and foal, a stud fee, veterinary bills and other expenses. The defendants then informed Provanzano that they would not breed Mild Emotion again.

Provanzano asserts that when he arranged to have the horses transported back to New England in May, 2010, he learned that there was yet another foal, Ms. Martha Anne. He received an invoice for $2,000 for the breeding of Mild Emotion and incurred additional transportation expenses for the filly. Mild Emotion's hooves were so damaged (allegedly due to the three pregnancies) that she needed very expensive veterinarian treatment and might not be able to be shod in the future. Provanzano alleges that the injuries to Mild Emotion as a show horse will result in the loss of approximately $80,000 in prize money.

Plaintiff claims that the defendants' multiple actions constitute unfair and deceptive acts or practices in violation of

Chapter 93A. On September 14, 2010, plaintiff sent the defendants a Chapter 93A demand letter in which he claimed over $150,000 in compensatory damages and that they be trebled. He received no reply but, a few weeks later, Turner and Parker sued Provanzano in the Circuit Court for Woodford County, Kentucky (No. 10-CI-00517) alleging business defamation and breach of a verbal contract with Parker ("the Kentucky Action"). In that case, the defendants seek a declaratory judgment that they have not violated any Massachusetts or other state law and claim that Provanzano put a hold on the credit cards he used to pay Parker and stopped payment on previously submitted checks.

Parker and Turner report that, as of November 11, 2010, Provanzano had not yet been served in the Kentucky Action because he evaded service by hiding from the service processor and not returning his phone calls. On November 12, 2010, defendants served Attorney Andrew Breines, who was Provanzano's counsel in that action, with a motion for injunctive relief. Breines responded that he no longer represented Provanzano. Nevertheless, Breines has been filing pleadings on behalf of plaintiff in this case although he has not filed his appearance.

## II. **Procedural History**

Provanzano filed his complaint in the Massachusetts Superior Court Department for Essex County in October, 2010 and the case was timely removed to federal court by the defendants. On

November 11, 2010, the defendants filed a motion to dismiss which Provanzano opposed. On December 20, 2010, the plaintiff filed a motion to remand the case to state court and requested oral argument and attorney's fees in connection with that motion. Finally, on December 21, 2010, the defendants moved for a protective order which plaintiff opposed.

### III. Motion to Remand

#### A. Standard

Defendants removed this case to federal court on the basis of diversity jurisdiction pursuant to 28 U.S.C. § 1332. A non-resident defendant may remove a civil case from state court to a United States District Court if the case presents a controversy between citizens of different states and the amount in controversy exceeds $75,000. 28 U.S.C. §§ 1332, 1441(b). To determine whether those requirements are satisfied, the Court must examine the circumstances at the time of the petition for removal. Carey v. Bd. of Governors of Kernwood Country Club, 337 F. Supp. 2d 339, 341 (D. Mass. 2004). If the Court determines that those requirements are not satisfied, the case must be remanded. See 28 U.S.C. § 1447(c). The party seeking removal bears the burden of showing that removal was proper. Danca v. Private Health Care Sys., Inc., 185 F.3d 1, 4 (1st Cir. 1999).

### B.   Application

It is undisputed that there is complete diversity in this case. The plaintiff, however, asserts that he seeks less than $75,000 in damages. He claims that the amounts stated in the complaint are the total amounts he paid to the defendants, not his alleged damages.

The amount in controversy is determined by the sum claimed by the plaintiff in his complaint, provided that the claim is made in good faith. St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 288-89 (1938). In his complaint, plaintiff states:

> As a result of the unfair and deceptive acts or practices of the defendants, the plaintiff has been damaged by an amount in excess of $150,000.00 with respect to the boarding fees and stud fees for the unauthorized babies, the missing property and the lost show income with respect to Mild Emotion.

Specifically, plaintiff alleges that, as a result of defendants' conduct, he lost approximately $80,000 in prize money and incurred $109,568 of unnecessary expenses. Plaintiff seeks treble damages pursuant to Chapter 93A. Even without including the service charges, plaintiff's claim for treble damages due to lost prize money is $240,000. The Court finds that the amount in controversy requirement is, therefore, satisfied, and will deny the plaintiff's motion to remand. Because the defendants' removal was not frivolous or done in bad faith, plaintiff's request for attorney's fees in connection with his motion to remand will be denied as well.

**IV.  Motion to Dismiss**

The defendants move to dismiss this action 1) pursuant to Fed. R. Civ. P. 12(b)(2), for lack of personal jurisdiction, 2) pursuant to Fed. R. Civ. P. 12(b)(6), for failure to state a claim upon which relief can be granted and 3) because of the pending Kentucky Action.

Defendants proffer a breeding contract that Provanzano allegedly entered into with Parker in which he agreed that Parker could breed Mild Emotion to the stallion, Jon Bugatti.  The contract was signed by Parker on May 7, 2007 and by Provanzano on February 18, 2008.  It includes a Kentucky choice of law provision and a Woodford County, Kentucky forum selection clause. Provanzano apparently handwrote under the Kentucky forum selection clause: "owner's responsibilities will be governed by Massachusetts law."  On the Court's copy, however, the handwritten note is crossed off and illegible.  In any event, because the defendants do not rely on the forum selection clause as the basis for their motion to dismiss, the Court declines to consider the enforceability of that clause.

Defendants also submit a letter and two emails from Provanzano, dated October 17, 2008, November 12, 2008 and November 18, 2009, respectively, that express his intention to sell the colts and are devoid of any indication that the breeding was without permission.  Finally, the defendants proffer an

invoice, dated December 7, 2007, on which Provanzano wrote that he would love to be there when "Vixen" gives birth.

### A.   Personal Jurisdiction

#### 1.   Standard

On a motion to dismiss for want of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is 1) statutorily authorized and 2) consistent with the Due Process Clause of the United States Constitution. Astro-Med, Inc. v. Nihon Kohden Am., Inc., 591 F.3d 1, 9 (1st Cir. 2009). When a district court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, it must apply the "prima facie" standard of review. United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 618 (1st Cir. 2001). Under that standard,

> it is plaintiff's burden to demonstrate the existence of every fact required to satisfy both the forum's long-arm statute and the Due Process Clause of the Constitution.

Id. (quoting United Elec. Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp., 987 F.2d 39, 43 (1st Cir. 1993)).  The plaintiff must proffer evidence of the specific facts upon which he relies to establish personal jurisdiction. Id. at 619.  To meet that requirement, the plaintiff must "go beyond the pleadings and make affirmative proof." Id. (quoting 163 Pleasant St. Corp., 987 F.2d at 44).  "[P]laintiffs may not rely on unsupported allegations in their pleadings to make a prima facie

showing of personal jurisdiction." Boit v. Gar-Tec Prods., Inc., 967 F.2d 671, 675 (1st Cir. 1992).

Because the Massachusetts long-arm statute reaches to the full extent that the Constitution allows, the Court may proceed directly to the Constitutional analysis. See Sawtelle v. Farrell, 70 F.3d 1381, 1388 (1st Cir. 1995); Tatro v. Manor Care, Inc., 625 N.E.2d 549, 553 (Mass. 1994). Due Process requires that the defendants have "minimum contacts" with the forum state such that the "maintenance of the suit does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).

A court may exercise either general or specific personal jurisdiction over an out-of-state defendant. Angela Adams Licensing, LCC v. Dynamic Rugs, Inc., 463 F. Supp. 2d 82, 84 (D. Me. 2006). General jurisdiction exists when the defendant has engaged in "continuous and systematic activity," unrelated to the suit, in the forum state. Pritzker v. Yari, 42 F.3d 53, 60 (1st Cir. 1994). Specific jurisdiction exists where the plaintiff's cause of action arises from or relates to the defendant's contacts with the forum state. Id.

The First Circuit employs a tripartite analysis to determine whether specific jurisdiction is appropriate. The Court inquires whether 1) the claims arise out of or are related to the defendants' in-state activities, 2) the defendants have

purposefully availed themselves of the laws of the forum state and 3) the exercise of jurisdiction is reasonable under the circumstances.  See, e.g., Platten v. HG Bermuda Exempted, Ltd. 437 F.3d 118, 135 (1st Cir. 2006); Sawtelle, 70 F.3d at 1389. The reasonableness inquiry operates on a sliding scale with the first two factors of the tripartite analysis.  That is, a particularly strong showing of relatedness and purposeful availment eases the plaintiff's burden of demonstrating reasonableness.  Sawtelle, 70 F.3d at 1394.

To satisfy the purposeful availment requirement, the First Circuit Court of Appeals has held that

> the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable.

Astro-Med, 591 F.3d at 10.  The United States Supreme Court had previously declared that such a requirement

> ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts . . . or of the unilateral activity of another party or a third person.

Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476 (1985) (internal citations omitted).  The "relatedness" test is a "flexible, relaxed" standard that focuses on the nexus between the plaintiff's claim and the defendants' contacts with the forum state.  Astro-Med, Inc., 591 F.3d at 9; Ticketmaster-New York v.

Alioto, 26 F.3d 201, 206-07 (1st Cir. 2004).

Finally, in evaluating whether the exercise of personal jurisdiction would be reasonable or would offend traditional notions of fair play and substantial justice, the Court considers what are known as the "Gestalt factors," including 1) the burden on the defendant of appearing, 2) the forum state's interest in adjudicating the dispute, 3) the plaintiff's interest in obtaining convenient and effective relief, 4) the judicial system's interest in obtaining the most effective resolution of the controversy and 5) the common interests of all sovereigns in promoting substantive social policies. Burger King Corp., 471 U.S. at 477.

### 2. Application

In this case, the personal jurisdiction analysis is confounded by the parties' contradicting allegations. Provanzano claims that the defendants are present in Massachusetts regularly to transact business, attend horse shows, solicit customers, advertise and sell Parker's horses. Provanzano alleges that he first met Turner at a horse show in Springfield, Massachusetts in 1998 where Turner sold him a horse. Turner also then allegedly asked Provanzano to board his horse at his facility in New Hampshire, which Provanzano did. Plaintiff maintains that Parker regularly transacts business in Massachusetts on her own accord and solicits business in Massachusetts through 1) advertisements

in the national magazine Saddle Horse Report which is distributed in Massachusetts and 2) her agent, Turner. Provanzano also claims that Turner introduced Parker to Provanzano at a horse show in Springfield, Massachusetts in 2006 where they discussed the prospect of transporting Mild Emotion to Kentucky for treatment.

Defendants deny all of those allegations. Although they agree that Turner suggested Parker's facility as an appropriate location for Mild Emotion's recovery, they maintain that Parker has never met Provanzano in person and that Mild Emotion was shipped to Kentucky solely on plaintiff's initiative.

In her affidavit, Parker states that neither she, nor any of her employees, traveled to Massachusetts in 2006 to meet with Provanzano regarding Mild Emotion. She attests that she has never met Provanzano personally and that it was only after Mild Emotion arrived in Kentucky that she discussed with Provanzano by telephone how much he would pay for boarding Mild Emotion at her facility. Invoices for her services were sent to Provanzano's address in Massachusetts but Parker maintains that she did not solicit Provanzano's business either by contacting him or by sending him promotional materials. Her only business-related trip to Massachusetts was in 2007, to attend one horse show with a client.

In his affidavit, Turner states that he began training Mild

Emotion in 2003 in New Hampshire.  At Provanzano's request, Turner suggested Parker View Farms as a place where the horse could board in Kentucky but Turner maintains that the horse was sent to Kentucky on Provanzano's own initiative.  Turner denies that he or any of his employees met with Provanzano in Massachusetts at that time and asserts that he did not regularly communicate with Provanzano after Mild Emotion was transported to Kentucky.

Provanzano proffers only his verified complaint in support of his jurisdictional allegations in which he alleges that he met Parker and Turner at a horse show in Massachusetts.  A verified complaint signed under the pains and penalties of perjury is, however, treated as an affidavit.  See Rainwater v. Alarcon, 268 Fed. Appx. 531, 534 (9th Cir. 2008).  Because the Court must accept plaintiff's properly supported allegations as true, it finds that Provanzano has stated a sufficient basis for specific personal jurisdiction.  That is so because, where someone voluntarily sends a representative into a state for his own commercial advantage and for the purpose of entering into a contract with a resident of that state, the purposeful availment prong is satisfied.  See Foster-Miller, Inc. v. Babcock & Wilcox Canada, 46 F.3d 138, 145 (1st Cir. 1995).  Whereas this action arose out of that alleged meeting, the relatedness prong is also satisfied.

-13-

With respect to the Gestalt factors, the Court finds that requiring the defendants to litigate in Massachusetts does not offend traditional notions of fair play and substantial justice. The First Circuit has held that the first factor is "only meaningful where a party can demonstrate some kind of special or unusual burden." Pritzker, 42 F.3d at 64. Massachusetts is a less burdensome venue for Turner than is Kentucky. Although it is more difficult for Parker to litigate in Massachusetts, it does not present an unreasonable burden. See id. (finding that travel between New York and Puerto Rico was not a special or unusual burden).

With respect to the second factor, Massachusetts has an interest in adjudicating the dispute because it involves a business relationship with a Massachusetts resident and the application of a Massachusetts statute. The third factor clearly weighs in favor of the exercise of personal jurisdiction because the plaintiff is a resident of Massachusetts. With respect to the fourth factor, in most cases between private litigants, such as the instant action, the "interest of the judicial system in the effective administration of justice does not appear to cut in either direction". Sawtelle, 70 F.3d at 1395. Finally, under the fifth factor, the social policy in favor of protecting consumers in Massachusetts counsels in favor of exercising jurisdiction.

In sum, the Court finds that Provanzano has sufficiently alleged specific personal jurisdiction and his complaint will not be dismissed on that basis.

**B.    Motion to Dismiss for Failure to State a Claim**

   **1.    Standard**

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  In considering the merits of a motion to dismiss, the Court may look only to the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the complaint and matters of which judicial notice can be taken. Nollet v. Justices of the Trial Court of Mass., 83 F. Supp. 2d 204, 208 (D. Mass. 2000), aff'd, 248 F.3d 1127 (1st Cir. 2000).  Furthermore, the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. Langadinos v. Am. Airlines, Inc., 199 F.3d 68, 69 (1st Cir. 2000).  If the facts in the complaint are sufficient to state a cause of action, a motion to dismiss the complaint must be denied. See Nollet, 83 F. Supp. 2d at 208.

Although a court must accept as true all of the factual allegations contained in a complaint, that doctrine is not, however, applicable to legal conclusions. Ashcroft v. Iqbal, 129

S. Ct. 1937, 1949 (2009). Threadbare recitals of the legal elements, supported by mere conclusory statements, do not suffice to state a cause of action. Id. Accordingly, a complaint does not state a claim for relief where the well-pled facts fail to warrant an inference of any more than the mere possibility of misconduct. Id. at 1950.

### 2. Application

Defendants argue that plaintiff has failed to state a claim upon which relief can be granted under Mass. Gen. Laws ch. 93A because he is not a "consumer", which is defined as a "person who purchases or leases goods or services or property, real or personal, primarily for personal, family or household purposes." Slaney v. Westwood Auto, Inc., 322 N.E.2d 768, 777 (Mass. 1975). Defendants argue that Provanzano viewed the breeding of Mild Emotion as a business rather than a personal endeavor. In any event, Provanzano's intent is a question of fact which will not be resolved on a motion to dismiss. Because plaintiff's allegations must be taken as true, Provanzano has stated a claim upon which relief can be granted.

### C. The Kentucky Action

The defendants argue that, because the Chapter 93A issue will be litigated in the Kentucky Action, the plaintiff will suffer no prejudice if this case is stayed or dismissed. They argue that the first-to-file rule applies here and warrants the

dismissal of this action.

The first-to-file rule provides that

> where two suits involve the same issues, and prosecution of both would entail duplicative litigation and a waste of judicial resources, the first filed suit is generally preferred.

Cordell Eng'g v. Picker Int'l Inc., 540 F. Supp. 1316, 1318 (D. Mass. 1982). The Court finds, however, that the first-to-file rule does not apply here because that rule applies only when both cases are filed in federal court. See, e.g., World Energy Alts. v. Settlemyre Indus., Inc., 671 F. Supp. 2d 215, 218 (D. Mass. 2009). Thus, the Court will not dismiss this action on the basis of the first-to-file rule.

Nevertheless, given the fact that the two suits arise from the same nucleus of operative facts, involve the same parties and both seek a determination of liability of Turner and Parker for a violation of Chapter 93A, one alternative would be for this Court to stay the litigation pending the outcome of the Kentucky Action. United States District Courts have the discretionary power to stay proceedings, Landis v. North Am. Co., 299 U.S. 248, 254-55 (1936), but, under the "Colorado River Doctrine", a district court should stay its proceedings pending the resolution of a concurrent state court proceeding arising from the same facts only if "extraordinary circumstances" are present. Currie v. Grp. Ins. Comm'n, 290 F.3d 1, 10 (1st Cir. 2002). The First Circuit looks at a number of factors in determining whether

extraordinary circumstances exist, including:

    (1)   whether either court has assumed jurisdiction over a res;
    (2)   the inconvenience of the federal forum;
    (3)   the desirability of avoiding piecemeal litigation;
    (4)   the order in which the forums obtained jurisdiction;
    (5)   whether federal law or state law controls; and
    (6)   whether the state forum will adequately protect the interests of the parties.

Id.

The Court finds that this case does not present extraordinary circumstances justifying a stay. Weighing against a stay are the facts that 1) the Kentucky Action was filed in anticipation of this lawsuit, 2) the claims in the two cases are not identical, 3) process has yet to be served in the Kentucky Action (albeit ostensibly due to Provanzano's avoidance of the process server) and 4) this case involves the application of a Massachusetts statute. Moreover, the Court need not be concerned about inconsistent judgments here because the doctrine of res judicata can be employed if one court renders a judgment before the other. See Kelly Inv., Inc. v. Cont'l Common Corp., 315 F.3d 494, 498-99 (5th Cir. 2002). In sum, the Court declines to dismiss or stay the litigation.

**V.   Motion for a Protective Order**

Defendants seek a protective order requiring Provanzano to withdraw his discovery requests because there has been no Fed. R. Civ. P. 26(f) conference. Indeed, Fed. R. Civ. P. 26(d) provides that a party cannot seek discovery "from any source before the

-18-

parties have conferred as required by Rule 26(f)" unless it falls into a number of exceptions delineated in Fed. R. Civ. P. 26(a)(1)(B).  Defendants argue that plaintiff is attempting to use discovery to harass and annoy them while he evades service of the complaint in the Kentucky Action.  Plaintiff opposes the motion, stating that he filed routine discovery requests in order to obtain evidence relevant to his opposition to the motion to dismiss.

Because the Court will deny the motion to dismiss, discovery related to opposing that motion is unnecessary.  Furthermore, the Court will promptly set a date for the Fed. R. Civ. P. 26(f) scheduling conference.  Thus, the motion for a protective order will be allowed.

### ORDER

In accordance with the foregoing,

1) plaintiff's motion to remand and for attorney's fees (Docket No. 11) is **DENIED;**

2) defendants' motion to dismiss (Docket No. 3) is **DENIED;**

3) defendants' motion for a protective order (Docket No. 14) is **ALLOWED;** and

4) Attorney Andrew S. Breines is directed to file a notice of appearance in this case.

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated June 16, 2011