```
                  United States District Court
                    District of Massachusetts
_____
                              )
JOSEPH S. PROVANZANO,         )
     Plaintiff,               )
                              )
     v.                       )  Civil Action No.
                              )  10-11893-NMG
PARKER VIEW FARM, INC., ROBERT)
M. TURNER, LM TURNER STABLES, )
INC., and BRIDGETTE M. PARKER,)
     Defendants.              )
_____)
```

**MEMORANDUM AND ORDER**

**GORTON, J.**

The plaintiff, Joseph S. Provanzano, brings this action against Bridgette M. Parker, individually and doing business as Parker View Farm, Inc. ("Parker"), and Robert M. Turner, individually and doing business as LM Turner Stables, Inc. ("Turner"), for violations of the Massachusetts Consumer Protection Act, M.G.L. c. 93A ("Chapter 93A"). Pending before the Court are defendants' motion to reconsider and renewed motion to dismiss.

## I. Background

### A. Factual Background

Provanzano, a Massachusetts resident, owns four horses: Mild Emotion, Sandra's Dream, Joe's Boy and Ms. Martha Anne. In 2006, Mild Emotion suffered an eye injury while she was being boarded and trained at Turner Stables in New Hampshire. After the mare

was injured, Turner recommended to Provanzano that she be sent to Parker, who owns a horse farm in Kentucky, for surgery and to be boarded in the event that she needed additional treatment. That year Provanzano agreed to board Mild Emotion at Parker's facility in Kentucky for $350 per month ("the Boarding Contract"). Mild Emotion was boarded at the facility during the succeeding four years and, while there, produced three foals: Sandra's Dream, Joe's Boy and Ms. Martha Anne. In May, 2010, Parker returned all four horses to Provanzano. Beyond that, the parties dispute the facts.

At some point after the parties entered into the Boarding Contract, they apparently entered into a Breeding and Transported Semen Agreement ("the Breeding Contract"), whereby Parker agreed to breed Mild Emotion in exchange for Provanzano's payment of a $1,500 stud fee ("the stud fee"). The contract was signed by Parker on May 7, 2007, and by Provanzano on February 18, 2008. It included a Kentucky choice of law provision and a Woodford County, Kentucky forum selection clause ("the forum selection clause"). Provanzano did not object to or delete either provision but submits that he handwrote under the choice of law provision: "owner's responsibilities will be governed by Massachusetts law." When Parker received the signed contract back from Provanzano, she crossed out his addendum.

Provanzano denies that he ever authorized Parker to breed

Mild Emotion and claims, to the contrary, that he clearly instructed Parker not to breed the mare. Provanzano alleges that he was coerced into signing the Breeding Contract and that he paid the stud fees under protest, fearful that if he did not, he would never see his horses again.

Defendants deny any wrongdoing. They acknowledge that Provanzano did not sign the Breeding Contract until February 18, 2008, shortly before the first foal, Sandra's Dream, was born, but maintain that the parties had a prior understanding that Parker was to breed Mild Emotion. Defendants offer the following evidence in support of their contention: 1) an invoice, dated December 7, 2007, on which Provanzano wrote that he would love to be there when Mild Emotion gives birth and 2) a letter and two emails from Provanzano, dated October 17 and November 12, 2008, and November 18, 2009, respectively, that express Provanzano's intention to sell the foals and are devoid of any indication that the breeding was without permission.[1]

### B. Procedural History

Provanzano filed his complaint in the Massachusetts Superior Court Department for Essex County in October, 2010, alleging that the following acts of defendants constitute "unfair and deceptive acts" in violation of Chapter 93A: 1) breeding Mild Emotion

---

[1] Provanzano responds that those communications were "to insure that the horse being impregnated was some sort of scheme" but he does not elaborate upon his reasoning.

without authorization, 2) attempting to sell Mild Emotion and her offspring without authorization, 3) unilaterally increasing boarding fees, 4) charging other unauthorized fees and 5) refusing to return Provanzano's property. Defendants timely removed the case to this Court and filed a motion to dismiss which Provanzano opposed. In December, 2010, defendants replied to Provanzano's opposition and Provanzano sur-replied in January, 2011. Later that month, defendants concluded the briefing by responding to Provanzano's sur-reply.

In June, 2011, this Court issued a Memorandum and Order denying defendants' motion to dismiss ("the Memorandum and Order"). Pending before the Court are defendants' motion to reconsider the Memorandum and Order and their renewed motion to dismiss.

**II. <u>Legal Analysis</u>**

    **A.    Motion to Reconsider**

        **1.    Standard**

The Court has "substantial discretion and broad authority to grant or deny" a motion for reconsideration made pursuant to Fed. R. Civ. P. 59(e) or 60(b). <u>Ruiz Rivera</u> v. <u>Pfizer Pharm., LLC</u>, 521 F.3d 76, 81 (1st Cir. 2008). A motion for reconsideration will be allowed if the movant shows a manifest error of law, newly discovered evidence or that the Court has made an error "not of reasoning but apprehension." <u>Id.</u>

### 2. Application

On November 11, 2010, defendants moved to dismiss the complaint on the grounds that 1) they do not have any "general and systematic contacts" with Massachusetts that would justify the exercise of general jurisdiction and 2) the Court does not have specific jurisdiction over them because the cause of action did not arise in Massachusetts and they did not purposefully avail themselves of the privileges of state law. Notably, defendants did not mention the forum selection clause in the Breeding Agreement nor suggest that the Court should decline to exercise jurisdiction on that basis. For that reason, the Court did not consider it in ruling on the motion to dismiss.

In their motion to reconsider, defendants acknowledge their omission but point out that they did raise the forum selection clause argument in a reply brief which was attached as an exhibit to a different motion and not filed separately with the Court. Because defendants did not raise the argument in their motion to dismiss, the Court was not required to assess it in the Memorandum and Order and is under no obligation to consider it now.

The Court recognizes, however, that the crux of the dispute between the parties is the alleged unauthorized breeding of Mild Emotion and that to resolve that dispute the Court inevitably must analyze the Breeding Agreement which contains a forum selection clause. Given the prominence of that issue in the

case, the Court will allow defendants' motion for reconsideration and consider defendants' forum selection clause argument at this time.

**B. Motion to Dismiss**

**1. Standard**

Normally on a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that personal jurisdiction is authorized by the Massachusetts long-arm statute, Mass. Gen. Laws ch. 223A, § 3 ("the Massachusetts long-arm statute"), and is consistent with the Due Process Clause of the United States Constitution. Astro-Med, Inc. v. Nihon Kohden Am., Inc., 591 F.3d 1, 8 (1st Cir. 2009). By signing a forum selection clause, however, a party to a contract waives its right to challenge personal jurisdiction. Inso Corp. v. Dekotec Handelsges, mbH, 999 F. Supp. 165, 166 (D. Mass. 1998).

A motion to dismiss based upon a forum selection clause is treated as one alleging a failure to state a claim under Fed. R. Civ. P. 12(b)(6). Silva v. Encyclopedia Britannica, Inc., 239 F.3d 385, 387 (1st Cir. 2001). Accordingly, it can be raised at any time before disposition on the merits and is preserved against waiver prior to that time. Id. at 388.

A forum selection clause "does not divest a court of [the] jurisdiction that it otherwise retains," rather, it

> constitutes a stipulation in which the parties join in asking the court to give effect to their agreement by

-6-

declining to exercise its jurisdiction. Id. at 389 n.6. As a practical matter, however, a valid forum selection clause carries with it a "strong presumption of enforceability" and should be enforced unless the resisting party can show that enforcement would be unreasonable or would contravene a strong public policy of the forum in which suit is brought. Rivera v. Centro Medico de Turabo, Inc., 575 F.3d 10, 18 (1st Cir. 2009).

### 2. Application

Before a court considers whether to enforce a forum selection clause, it must first decide a few threshold matters, such as whether 1) the parties entered into a valid contract of which the forum selection clause was an agreed-to provision, 2) the clause is mandatory and 3) the clause governs the claims asserted in the lawsuit. If the Court answers all of those questions in the affirmative, it will move on to assess whether the forum selection clause should be enforced.

#### a. The parties entered into a valid contract with a forum selection clause

Sitting in diversity, this Court will apply Massachusetts law to determine whether the parties entered into a contract to breed Mild Emotion. Erie Railroad Co. v. Thompkins, 304 U.S. 64 (1938). Under Massachusetts law, a contract is formed if the parties 1) agree on all of the material terms, 2) express the present intention to be bound by the agreement and 3) exchange

-7-

sufficient consideration. Situation Mgmt. Sys., Inc. v. Malouf, Inc., 724 N.E.2d 699, 703 (Mass. 2000).

In this case, the parties entered into a valid breeding contract. The Breeding Contract contained the names of the horses to be bred, the breeding fee, the payment method and the breeding season so it was not indefinite. Both parties signed it and thereby expressed their intention to be bound. Valid consideration was exchanged: Provanzano paid the stud fee and Parker View Farms "provid[ed] fresh cooled semen for said mare," pursuant to the contract, a fact that even Provanzano does not dispute. Nor can he: Sandra's Dream, Joe's Boy and Ms. Martha Anne are living proof.

Provanzano claims that he was coerced into signing the agreement "by duress, threats and/or fraud." In essence, he suggests that the defendants held Mild Emotion hostage and threatened to sell her if Provanzano did not sign the breeding agreement and pay invoices past due. The Court is unpersuaded. One would imagine that Provanzano, an attorney by trade, would have alerted authorities or taken legal action in the event that he was being extorted. His extortion claim is further belied by his own words: in a series of emails and handwritten letters to Parker View Farm between January, 2007, and October, 2008, Provanzano expressed his enthusiasm about Mild Emotion's breeding and his desire to sell the mare.

In addition, Provanzano claims that his signing of the Breeding Contract on February 18, 2008, after Mild Emotion was impregnated, renders the contract void. He does not support his claim with any precedent and, indeed, there is none. Other evidence, including the January 1, 2007, message Provanzano included with the December, 2007, invoice, confirms the existence of a previous oral contract between the parties to breed Mild Emotion. That oral contract was not voided by the parties' later decision to reduce that contract to writing. See Restatement (Second) of Contracts § 27. Once the parties signed the Breeding Contract, their rights and obligations under the initial oral contract became governed by the written Breeding Contract. See id. § 27 cmt. d.

Finding that the parties entered into a valid contract, the Court proceeds to determine whether the forum-selection clause was an agreed-to provision of that contract. The forum selection clause in the Breeding Contract reads:

> This agreement shall be governed by the laws of the State of Kentucky, and the venue shall be in Woodford County.

Provanzano did not delete that provision but submits that he handwrote: "owner's responsibilities will be governed by Massachusetts law." When Parker received the signed contract back from Provanzano, she deleted Provanzano's note.

Provanzano argues that his modification to the contract voided the forum selection clause or, in the alternative, voided

the entire contract because it shows that there was no "meeting of the minds."  Neither argument has merit.  First, Provanzano's modification arguably impacts the choice of law provision, i.e. that the agreement is governed by the laws of Kentucky, but is not inconsistent with the forum selection provision, i.e. that the venue shall be a particular county in Kentucky.  Nothing prevents a Kentucky court from applying Massachusetts law.  Furthermore, the fact that Provanzano noted his objection to the choice of law provision does not support but rather undercuts his "meeting of the minds" argument: it shows that he carefully considered each provision and signed the contract anyway.

Therefore, the Breeding Agreement is a valid contract which contains a forum selection clause.

### b. The forum selection clause is mandatory

When a defense based upon a forum selection clause is properly before the Court, a threshold question is whether the clause is permissive or mandatory. Rivera, 575 F.3d at 17.  Permissive clauses, also known as "consent to jurisdiction" clauses, authorize jurisdiction in a designated forum but do not prohibit litigation elsewhere. Id.  In contrast, mandatory forum selection clauses contain clear language indicating that jurisdiction and venue are appropriate exclusively in a designated forum. Id.  The use of words such as "will" or "shall" demonstrate parties' exclusive commitment to the named forum.

Summit Packaging Sys., Inc. v. Kenyon & Kenyon, 273 F.3d 9, 12 (1st Cir. 2001).

The forum selection clause in the Breeding Contract reads:

> This agreement shall be governed by the laws of the State of Kentucky, and the venue shall be in Woodford County.

(emphasis added). The use of the word "shall" and the absence of any permissive language makes clear that the forum selection clause is mandatory. The next question is whether it covers plaintiff's claims.

### c. The clause governs some, but not all, of plaintiff's claims

Before a court may consider whether to enforce a forum selection clause, first it must decide whether the clause governs the claims asserted in the lawsuit. See Huffington v. T.C. Grp., LLC, 637 F.3d 18, 21 (1st Cir. 2011). Provanzano devotes the majority of the Complaint to accusations that defendants bred Mild Emotion without his consent, a claim that is clearly within the scope of the forum selection clause of the Breeding Contract. Nevertheless, Provanzano also alleges other Chapter 93A violations such as attempting to sell Mild Emotion and her offspring without authorization, unilaterally raising boarding fees, charging unauthorized fees and refusing to return Provanzano's property. Those claims arguably arise out of the Boarding Contract which presumably did not have a forum selection

clause.[2]  The forum selection clause in the Breeding Contract purports to govern only that agreement (not, for example, "this and all previous agreements" or "all claims relating to this agreement"), so the remaining claims are not covered by the forum selection clause.

### d. Enforcing the forum selection clause would not be unreasonable

The final two issues are whether enforcing the forum selection clause would be unreasonable and, if not, whether the Court should dismiss all of plaintiff's claims or only those claims covered by the forum selection clause.  A mandatory forum selection clause carries a "strong presumption of enforceability" that can be overcome only by a clear showing that enforcement would be unreasonable or contrary to the public policy of the forum. Rivera, 575 F.3d at 18 (citing M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1 (1972)).[3]  It may be unreasonable to enforce a forum selection clause if 1) a party was coerced into signing it, 2) the party was in an inferior bargaining position when it was negotiated, or 3) enforcing the clause would make it

---

[2]Both parties acknowledge that they entered into a Boarding Contract but do not specify whether it was oral or written.

[3]Happily, the Court need not address the Erie question of whether to treat the issue of the enforceability of a forum selection clause as "procedural" (and look to federal law) or as "substantive" (and look instead to state law) because, in determining enforceability, both Massachusetts and Kentucky follow the federal common-law standard promulgated by the Supreme Court in M/S Bremen.

practically impossible for that party to litigate its claims. See Somerville Auto Transp. Serv., Inc. v. Auto. Fin. Corp., 691 F. Supp. 2d 267, 272-74 (D. Mass. 2010).

Applying those factors to this case, the Court is not persuaded that it would be unreasonable to enforce the forum selection clause. As an experienced attorney, Provanzano cannot claim an inferior bargaining position. His handwritten modification indicates that he read the forum selection clause so he cannot object to it on the ground of unfair surprise. His incredible allegations of coercion and blackmail are untenable. While it may be inconvenient for Provanzano to litigate his claims in Kentucky,

> [t]he hardship caused by the move to a new forum must be much more than mere inconvenience; it must amount to practical impossibility,

for a court to decline enforcement on that basis. Noel v. Walt Disney Parks and Resorts U.S., Inc., No. 10-40071-FDS, 2011 WL 1326667, at *8 (D. Mass. March 31, 2011) (citing Huffington, 637 F.3d at 24). Provanzano has shown no such hardship. Finally, the cornerstone of the dispute between the parties is the alleged unauthorized breeding of Mild Emotion. Given the prominence of that issue, it would be unfair to force defendants to litigate it in Massachusetts when they specifically included a forum selection clause to avoid such an eventuality.

Nor would enforcing the clause contravene Massachusetts

public policy. Massachusetts has no special interest in litigating Provanzano's claims and there is no reason to believe that Kentucky courts will not "provide an adequate remedy." Huffington, 637 F.3d at 25. After all, Provanzano's modification to the choice of law clause, "owner's responsibilities will be governed by Massachusetts law," if validated, will ensure that his Chapter 93A claims are heard by the Kentucky court.

### e. All of plaintiff's claims should be dismissed

Finding that enforcement of the forum selection clause would not be unreasonable, the Court finally considers whether it should dismiss all of plaintiff's claims or only those covered by the forum selection clause. The First Circuit has not squarely addressed the question of whether a Court should dismiss all of a plaintiff's tort claims pursuant to a forum selection clause when, as here, two contracts, only one of which has a forum selection clause, form the basis for those claims. It has, however, decided the similar issue of whether a Court should dismiss a case pursuant to a forum selection clause when a plaintiff's tort claims arise from "the same operative facts" as his parallel claims for breach of contract. In such a circumstance, the entire case is to be heard in the forum selected by the contracting parties. Lambert v. Kysar, 983 F.2d 1110, 1121-22 (1st Cir. 1993). To hold otherwise, the First Circuit has declared, would

reward attempts to evade the enforcement of forum
selection agreements through artful pleading of tort
claims in the context of a contract dispute,

id., and "ignore the fundamental principle of judicial economy," Rivera v. Centro Medico de Turabo, Inc., 575 F.3d 10, 17 (1st Cir. 2009).

The same principle counsels the Court to dismiss all of Provanzano's claims here pursuant to the forum selection clause. Provanzano cannot evade the forum selection clause to which he agreed in writing by describing his claims as Chapter 93A violations. Furthermore, it would be a significant waste of judicial resources to try the unauthorized breeding counts in Kentucky and the remaining counts in Massachusetts.

**ORDER**

In accordance with the foregoing,

1) defendants' motion to reconsider (Docket No. 24) is **ALLOWED** pursuant to Rules 59(e) or 60(b), and

2) Upon reconsideration, defendants' renewed motion to dismiss (Docket No. 26) is **ALLOWED,** and

3) Defendants' original motion to dismiss (Docket No. 3) is **DENIED** as moot.

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated November 7, 2011